**Affirmed and Memorandum Opinion filed July 19, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00256-CV

---

**CHARLES CRUM, Appellant**

**V.**

**RONNY BYNUM GOZA, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-26596**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Charles Crum, appeals a take-nothing judgment rendered on a jury verdict in Crum's personal injury suit against appellee, Ronny Bynum Goza, arising from a vehicular accident. In five issues, Crum contends the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

### I. BACKGROUND

On June 28, 2008, Crum was a Houston Police Department motorcycle officer assigned to escort an oversized load through Harris County. The caravan for this load consisted of three vehicles: a "pilot" pick-up truck, driven by Goza; an 18-wheeler,

driven by Lynn Overton, which transported the load; and another pick-up truck, driven by Dean Sells, which followed the 18-wheeler. Crum's duties included clearing intersections ahead of the caravan; he rode to their left, stopped in each intersection to block traffic while the caravan safely crossed, and then passed them to secure the next intersection.

At one point, the caravan was traveling east on the Beltway 8 service road. Under the permit issued by the Texas Department of Transportation, the route included a left turn from the Beltway 8 service road onto the northbound Highway 249 service road. Before the caravan left its point of origin that day, Crum decided the permitted route was not feasible because the drivers would encounter traffic difficulties on Highway 249. Crum changed the route to entail proceeding straight through the intersection of the Beltway 8 and Highway 249 service roads. Crum claims he notified all drivers of the route change, whereas Goza maintains he was never informed of the change.

The Beltway 8 service road had three lanes for traffic traveling straight through the intersection and two lanes for traffic turning left onto the northbound Highway 249 service road. Goza had been travelling in the far right lane of the Beltway 8 service road. As he approached the intersection, Goza first moved one lane to his left. He then moved another lane to his left, preparing to make the left turn onto the northbound Highway 249 service road. As he entered this lane, Goza's truck collided with Crum's motorcycle as Crum passed the procession to block the intersection. Crum claims he was injured as a result of this collision.

Crum sued Goza, alleging negligence and negligence *per se*. Goza pleaded comparative responsibility of Crum. A jury found that the negligence, if any, of Goza was not a proximate cause of the accident and Crum's negligence was a proximate cause. Pursuant to the verdict, the trial court signed a final judgment ordering that Crum take nothing. Crum filed a motion for new trial, which was denied by written order.

## II. ANALYSIS

In his first, second, and fifth issues, Crum essentially contends the evidence is legally and factually insufficient to support the finding that he was negligent. In his third and fourth issues, Crum contends the evidence is legally and factually insufficient to support the finding of no liability on Goza's part. As discussed below, we conclude the evidence is legally and factually sufficient to support a finding that Goza was not negligent. Therefore, we need not address Crum's challenge to the finding that Crum was negligent because it was immaterial once the jury assigned no liability to Goza.

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* A party attacking legal sufficiency relative to an adverse finding on which he had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A party attacking factual sufficiency relative to an adverse finding on which he had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407. The amount of evidence

3

necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Crum argues the evidence is legally and factually insufficient to support the finding of no liability on Goza's part because he was negligent *per se*. Negligence *per se* is a common-law tort concept under which the standard of conduct is defined by statute instead of the reasonably-prudent-person test usually applied in "pure" common-law negligence claims. *Thomas v. Uzoka*, 290 S.W.3d 437, 444 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). When negligence *per se* is submitted, the jury is not asked to decide whether the person acted as a reasonably prudent person would have acted under the same or similar circumstances because the statute itself identifies the appropriate standard of conduct as a matter of law. *Id.* at 444–45. Unless an excuse for the statutory violation is proffered, the jury need decide only whether the statute was violated and, if so, whether the violation was a proximate cause of the injury. *Id.* at 445. Therefore, negligence *per se* is merely one method of proving breach of duty—a requisite element of any negligence claim. *Id.*

The statute pertinent to the present case provides,

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>> (1) shall drive as nearly as practical entirely within a single lane; and
>> (2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a) (West 2011). In the jury question at issue, the trial court submitted the following instruction, consistent with the statute:

> "Negligence" when used with respect to [Goza] means failure to use ordinary care that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. Negligence includes moving from one lane of traffic to another when that movement cannot be done safely.

4

Accordingly, we must determine whether the evidence is legally and factually sufficient to support the jury's rejection of the proposition that Goza's change into the left lane "[could] not be done safely."

At trial, the parties focused extensively on whether Crum informed the drivers, including Goza, of the change in the permitted route. Crum testified that, before the caravan left the point of origin, he first obtained the agreement of Overton (driver of the 18-wheeler) to the change; Crum then informed Goza and Sells (the other escort truck driver) of the change and instructed Goza to "stay to the right." Overton also testified he agreed to the route change before the transport began that day. However, in a previous statement to an insurance-company representative, Overton said the caravan planned to turn left onto the Highway 249 service road and he did not know there had been a route change. Further, Overton testified that, after the accident, Goza said he had not been informed of the route change and complied with the permit. Crum emphasizes the testimony from an investigating police officer that Goza admitted there had been a route change. However, this officer later clarified that Goza did not indicate whether he was informed of the change before or after the accident.

Goza testified he learned during his load-escort training that a police officer intending to change a permitted route is required to meet with all drivers and note their agreement on the permit; in this case, there was no meeting or notation, and Crum did not inform Goza of the route change. Goza further testified that, before moving toward the left, he announced "left-hand turn" to the other drivers via CB radio, and no one protested because of any route change. At trial, Sells confirmed there was no meeting and notation on the permit regarding a route change, Sells was never informed of a route change, and Goza announced the left turn via radio with no protest from the other drivers.

The issue regarding whether Crum informed Goza of the route change was simply a matter of deciding witness credibility, on which we defer solely to the jury's resolution. *See City of Keller*, 168 S.W.3d at 819; *Ellis*, 971 S.W.2d at 407. Thus, the jury was free to believe Goza's testimony, Sells's testimony, and Overton's initial statement, indicating

5

Crum did not inform them of the route change and Goza intended to guide the procession in a left turn, as originally permitted. Therefore, the jury could have also reasonably concluded that Goza did not expect Crum would pass the procession on the left to block the intersection as though the parties were traveling straight. In fact, Goza indicated that, under the permitted route, Crum's role at this point would have involved his staying to the left of the procession as it approached the intersection to prevent other traffic from also attempting a left turn while the procession was making its turn.

Crum suggests Goza was negligent *per se*, irrespective of whether he knew of the route change, because he should have seen Crum's motorcycle, with its flashing lights, before changing lanes. However, Goza testified that he signaled and looked in his driver's side mirror before moving into the lane where the accident occurred. At that point, Goza observed Crum behind the load with his motorcycle still stopped, blocking traffic at the previous intersection—the Beltway service road and the Southbound Highway 249 service road. Obviously, once Goza made the lane change, Crum was no longer at the preceding intersection, considering they collided. Nonetheless, Crum indicated he *accelerated* toward the next intersection in order to pass the procession—the action that Goza did not expect based on his belief the caravan planned to turn left. Therefore, the jury was free to conclude that Goza began the lane change at a point when he could safely perform this action—to comply with the permitted route, as understood by the drivers. Additionally, Crum emphasizes his extensive experience as a motorcycle officer escorting loads, compared to Goza's relative inexperience as an escort driver. However, the jury was free to consider these factors when deciding whether Goza was negligent, and we find no reason to disturb the jury's determination.

Accordingly, we conclude the evidence is legally sufficient to support the jury's finding of no liability on Goza's part and this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Crum's third and fourth issues.

6

We affirm the trial court's judgment.

/s/     Charles W. Seymore
        Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.